(36 South. 221.)

No. 14,883.

STATE v. PHILADELPHIA UNDERWRIT-
ERS.

(March 14, 1904.)

FOREIGN INSURANCE COMPANIES—LICENSE
FEES.

1. Where two nonresident insurance compa-
nies paid their respective state licenses for the
years 1901 and 1902, based upon the amount
of annual premiums earned during the preceding
year, license fees for the same years cannot be
required from their joint agents issuing their
joint policies under a certain name or style,
where evidence shows that said companies had
made due returns for the years 1900 and 1901,
to the Secretary of State, of all premiums earn-
ed, and that the premiums received on the said
joint policies were included in the totals.  Li-
cense taxes on insurance business are based on
amount of premiums, and not on the number of
agencies.

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish
of Orleans; Fred D. King, Judge.

Action by the state against the Philadel-
phia Underwriters.  Judgment for defendant,
and plaintiff appeals.  Affirmed.

Hugh Connell Cage, for appellant John
Fitzpatrick, state tax collector.  John F.
Tobin and William Sterling Parkerson, for
appellee.

LAND, J.  In the court a qua the state
tax collector ruled the defendant, through
Friedrichs, Palfrey & Redersheimer, agents,
to show cause why it should not pay $225.10,
with interest, attorney's fees, and costs, for
a license for the privilege of conducting the
business of fire insurance during the year
1901.

The Fire Association of Philadelphia and
the Insurance Company of North America
came into court, and answered under oath
the rule sued out by the tax collector.

Their answer was as follows:

"(1) That there is no such insurance com-
pany as the Philadelphia Underwriters; that
the policy known as the 'Philadelphia Un-
derwriters' is simply the result of a contract
between the two companies hereinabove
named, and is the joint act of the said two
companies, without independent existence of
its own.

"(2) That a license has been paid to the
state of Louisiana for all the premiums earn-
ed on the joint policies so issued under the
name 'Philadelphia Underwriters.'

"(3) That for the year 1900 the Fire As-
sociation made returns to the Secretary of
State for $42,906.31, of which amount $14,-
738.84 was one-half of the business written
in the 'Philadelphia Underwriters' policies;
and a license of $600 was paid for the year
1901 in accordance with the requirements of
the statute.

"(4) That for the year 1900 the Insurance
Company of North America made returns to
the Secretary of State of $120,610.17, of
which amount $14,738.84 was one-half of the
business written in the 'Philadelphia Under-
writers Policies,' and a license of $1,800 was
paid for the year 1901 in accordance with
the requirements of the statute.

"(5) That the said returns of business
written in the 'Philadelphia Underwriters'
policies were in accordance with the direc-
tions and requirements of the Secretary of
State.

"(6) That this suit is an attempt to col-
lect double taxes, in contravention of article
225 of the Constitution of 1898.

"Wherefore respondents pray that this
rule be dismissed with costs."

The rule was tried, and there was judg-
ment in favor of defendants rejecting plain-
tiff's demand with costs.  The state, repre-
sented by the tax collector, has appealed.

The facts set forth in the answer are sus-
tained by the evidence, which shows beyond
question that the 'Philadelphia Underwrit-
ers' is but a name under which joint poli-
cies of the two companies are issued by their
joint agents.  It is further shown that all
business transacted by such agents was em-

braced in the returns of said companies for the year 1900, on which their licenses for 1901 were based and issued.

The license law of 1898, where an insurance business is carried on or conducted in this state, exacts a separate license on said business for each company represented, said license to be based on the gross annual amount of premiums on all risks located within this state, and upon risks located in other states or foreign countries upon which no license has been paid therein. See section 9, Act No. 171 of 1898.

In this case the defendant is proceeded against as "an association, corporation, organization, company, society, or firm" conducting "the business of fire insurance" without license from the state, and it is alleged "that its gross receipts exceed the sum of fifteen thousand dollars per annum."

Where it is shown that defendant is not a legal entity, but merely a name under which two regularly licensed insurance companies conducted business through joint agents, the only question between them and the state is whether the gross annual amount of premiums collected through such agency has been returned according to law.

If so, the state can have no possible legal claim against them or the agency for additional license.

The license on the business of insurance is based on the gross annual amount of premiums, and not on the number of agents or agencies within the state.

If defendant was an agency, no separate return was required of the business transacted in its name. In returning the annual amount of premiums received during the year 1900 by each company, the business transacted by all of its agents was included.

Evidence dehors the returns was clearly admissible to show that a certain amount of the total premiums was derived from the business transacted by the defendant agency. It could be shown in no other way. The certificate of the Secretary of State required by section 7 of the license act of 1898 (No. 171) is a mere statement of the amount of business transacted during the preceding year as shown by the sworn return on file in his office.

In this case the state has received the proper license fees on all the premiums earned by the two companies in the conduct of their insurance business, and perforce must rest satisfied.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.

PROVOSTY, J., dissents.